ARCTIC LUMBER CO. v. BORDEN et al.

(Circuit Court of Appeals, Ninth Circuit. February 2, 1914.)

No. 2282.

1. APPEAL AND ERROR (§ 1011*)—REVIEW—QUESTIONS OF FACT.

Where the court on conflicting testimony found material facts against plaintiff, the only question for consideration on appeal was whether the findings or the conclusions of law were based upon a mistaken view of the law, or an obvious error in applying the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

2. MECHANICS' LIENS (§ 281*)—ACTIONS TO FORECLOSE—SUFFICIENCY OF EVIDENCE.

In a suit to foreclose a mechanics' lien in which it was claimed that the notice of lien was not filed within 30 days after completion of the building, evidence *held* insufficient to support a finding that the plan of installing a heating plant which had not been installed when the notice was filed had been abandoned.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. § 281.*]

3. MECHANICS' LIENS (§ 132*) — TIME FOR FILING NOTICE — COMPLETION OF BUILDING.

A building erected by a lessee pursuant to the lease had not been completed within a statute requiring the notice of lien to be filed within 30 days after completion of the building, where a heating plant contemplated by the lease had not been installed, one side had not been covered with cedar siding, and the building had been only partially painted.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190, 192–207; Dec. Dig. § 132.*]

4. MECHANICS' LIENS (§ 132*)—TIME FOR FILING—FILING BEFORE COMPLETION OF BUILDING.

Within a statute requiring notices of mechanics' liens to be filed within 30 days after the completion of the building on which the lien is claimed, the notice may be filed by one furnishing material at any time after it is furnished, though before the completion of the building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 190, 192–207; Dec. Dig. § 132.*]

5. MECHANICS' LIENS (§ 78*)—AGREEMENT OR CONSENT OF OWNER—NOTICE TO PREVENT LIEN.

Under Civ. Code Alaska, § 262, giving a lien to every contractor, lumber merchant, etc., furnishing material for the construction of a building for the work or labor done or material furnished at the instance of the owner, and section 265, providing that every building constructed upon lands with the knowledge of the owner shall be held to have been constructed at his instance and the land shall be subject to a lien unless within three days after obtaining knowledge of the construction he shall give notice that he will not be responsible therefor by posting a notice in writing to that effect in some conspicuous place upon the land or in the building, a lien may be prevented by posting such notice only where the work is not done and the material is not furnished at the owner's instance or at the instance of his agent, and where the work is done or material furnished at his instance he may not so prevent a lien.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 111; Dec. Dig. § 78.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**6. MECHANICS' LIENS (§ 75*)—AGREEMENT OR CONSENT OF OWNER—NOTICE TO PREVENT LIEN.**

A lease for five years was made in consideration of the lessees' agreement to pay a specified rental and to erect a building on the premises at their expense which upon termination of the lease was to belong to the lessor. The lessor agreed to grade the lot and build the foundation, and the lessees agreed to insure the building, any money collected thereon to be used in rebuilding or repairing, or, if they failed to rebuild, to be paid to the lessor. Before making the lease, the lessor had discussed with plaintiff, who subsequently sold lumber to a contractor with the lessees, the terms on which he could purchase lumber for the building, and plaintiff furnished one-third of the lumber before receiving notice that the lessor disclaimed liability for the cost. Within a year from the time the lease was made, the lessor was again in possession of the property. *Held*, that the lumber was furnished at the instance of the lessor, and hence he could not prevent a lien by posting a notice under Civ. Code Alaska, § 265, giving a lien where a building is constructed with the knowledge of the owner of the land unless he gives notice that he will not be responsible by posting a notice in writing to that effect on the land or in the building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 103–107; Dec. Dig. § 75.*]

**7. MECHANICS' LIENS (§ 75*)—AGREEMENT OR CONSENT OF OWNER—IMPROVEMENTS BY LESSEE.**

Where a lease authorizes the lessee to make improvements by deducting the cost from the rent, or where part of the consideration for the lease is the making of improvements which become a part of the realty or revert to the lessor, a mechanics' lien may attach for work done or materials furnished pursuant to a contract with the lessee.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 103–107; Dec. Dig. § 75.*]

**8. MECHANICS' LIENS (§ 157*)—NOTICE OF LIEN—INCLUSION OF NONLIENABLE ITEMS.**

A claim of a mechanics' lien for lumber furnished for use in the construction of a building was not rendered void by the inclusion of two items of lumber not used in the building, where there was nothing to show that the lienor did not deliver the lumber in good faith on the understanding that it was to be so used.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 268–274; Dec. Dig. § 157.*]

Appeal from the District Court of the United States for the Third Division of the Territory of Alaska; Edward E. Cushman, Judge.

Suit by the Arctic Lumber Company against W. H. Borden and others. From a decree dismissing the complaint, plaintiff appeals. Reversed and remanded, with instructions.

The appellant, a corporation, in a suit to foreclose a mechanic's lien, alleged in substance that on February 17, 1910, the appellee Borden was the owner of a certain lot in the town of Cordova, Alaska, and that on said date he leased the same to McCauley and Palmer upon the condition that the lessees should construct a building on the lot, which building should revert to Borden, according to the terms of the lease; that on February 23, 1910, the lessees entered into an agreement with the appellant, under which the latter was to furnish material for the construction of said building; that in pursuance thereof lumber was furnished to the amount of $3,480.36, of which $2,236.57 remained unpaid; that the appellant began to deliver the lumber on February 23, 1910, and continued so to do until August 6, 1910; that on September 6, 1910, within 30 days from the completion of the building, the appellant filed

its claim of lien in accordance with the Code of Alaska. The answer of the appellee Borden denied that any material had been furnished by the appellant for said building since the month of April, 1910, and it alleged that the building was completed and occupied in that month. Upon the issues and the testimony, the court found as facts that the lessees, on or about February 23, 1910, entered into a contract with one Goodall for the erection of a building on the lot, at the agreed price of $1,900; that the building was completed by the contractor on the 14th day of April, 1910; and that at that time the ground floor of the building was occupied by the lessees, and the second floor was occupied as a rooming house; and that the material furnished by the appellant after April 14, 1910, was certain small lots of lumber purchased by the lessees for the purpose of making alterations, changes, and repairs in said building which was no part of the original plan of the same; and that the small lots of lumber delivered on July 8th and August 6th were not shown to have been used in the construction of the building or in the alteration or repair of the same; that a period of more than 30 days had elapsed from the date of the completion of the building to the time of the filing of the lien in the recorder's office. On the ground that the notice of lien was not filed within 30 days from the completion of the building, as required by the law of Alaska, and the further ground that the appellee Borden on February 24, 1910, posted a notice in a conspicuous place on said lot notifying all persons that he would not be responsible for any material used in said building, a decree was entered dismissing the complaint.

R. J. Boryer, of Cordova, Alaska, and Kerr & McCord, of Seattle, Wash., for appellant.

J. C. Campbell and David L. Levy, both of San Francisco, Cal., and Brown & Lyons and E. E. Ritchie, all of Valdez, Alaska, for appellee W. H. Borden.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1-3] The court below, upon the consideration of the conflicting testimony of witnesses heard in open court, having found two important facts against the appellant, the only question for consideration here is whether the findings or the conclusions of law are based upon a mistaken view of the law, or an obvious error in applying the evidence. The appellant contends that, in finding that the lien notice was not filed within 30 days from the completion of the building, the court took the erroneous view that, because work upon the building had ceased and the building was occupied, it was completed, although a heating plant had not been installed therein and in other respects the building had not been finished. The lease provided that the building should be equipped with steam heat and radiators, "said steam heat to be either furnished by a boiler in the building or from and through steam pipes from outside the building." The court below found that, after the execution of the lease, McCauley and Palmer, the lessees, abandoned the plan of installing a heating plant and other features in said building, as provided in said lease, "and adopted different plans, in accordance with terms and plans set out in the written contract with Goodall." If this were a finding reached upon a consideration of conflicting evidence, it would be conclusive here. But it is not. The court assumed from the fact that the heating plant was not included in the contract which the lessees made with Goodall, a carpenter and builder,

for the construction of the building, and from the fact that the lessees postponed the installation of the heating plant, that the agreement between the lessees and Borden had been changed. But Borden testified that no change had ever been made in his agreement with the lessees, and it is clear from the evidence that Goodall's contract was limited to the construction of the building only. It did not include the plumbing nor the heating plant, and it did not include several important features of the agreement between Borden and his lessees. It included only a part of what was agreed upon in the lease. Goodall testified that he could not recall that he had ever discussed with Borden the subject of the heating plant, "only he (Borden) said that McCauley had agreed he would put in a steam heating plant at some future time," and Goodall testified that the lessees did not intend to put in a heating plant right then; that it was a consideration to come later on. All this indicates that the installation of the heating plant was deferred for a short time. The manager of the appellant testified that, when McCauley first discussed with him the prices of lumber for the building, McCauley said he was going to build a two-story house, to be a rooming house upstairs, plastered and lighted, and wired for electric lights and telephone, "and to contain a steam heating plant with radiators and pipes." Borden left for Juneau April 3, 1910, and did not return to Cordova until February 28, 1911. Feldman, a hardware merchant, who had an understanding with the lessees by which he was to furnish the heating plant, testified that Borden corresponded with him concerning the heating plant, and that in July he wrote Feldman a letter, "in which he complained that I did not answer his questions, and to induce me to answer his questions he said I might have something to say when the heating plant is going to be put in." The evidence indicates that at the time when the lien notice was filed, not only had the steam heating plant not been installed, but the building was incomplete, in that upon one side it had not been covered with cedar siding, and that it had been but partially painted.

The Mechanic's Lien Law of Alaska is adopted from the lien law of Oregon, and before its adoption the Supreme Court of Oregon had held, in Avery v. Butler, 30 Or. 287, 47 Pac. 706, that:

"When work demanded by the terms of the original contract has been omitted, the final completion of the structure dates from the time such omissions are supplied by the builder at the request of the owner, although in the meantime the latter may have taken possession of the property, and that, while there is anything to do which it is the duty of the builder to perform under the terms of the contract, the work upon which he is engaged is not completed until this obligation is accomplished."

And in Crane Co. v. Ellis, 58 Or. 299, 114 Pac. 475, in a case where the building contract provided that the building should be completed by December 1, 1906, and the work of construction was completed in February, 1907, except for the laying of a cement floor in the basement which, on account of the dampness of the ground was not put in until August, 1907, the date of the laying of the cement floor was taken by the court as the date of the completion of the building.

[4] But the appellee contends that, if the building was not completed when the lien notice was filed, the notice was ineffective and

void for the reason that it was filed prematurely and not within 30 days after the completion of the building, and cites decisions of courts which so hold. We are not disposed to follow those decisions, based as they are upon a narrow and technical construction of the lien law. There is no prejudice to any substantial right of the owner of the building in the filing of a lien at any time after the material is furnished, and before the completion of the building. In Wills v. Zanello, 59 Or. 291, 117 Pac. 291, it was held that this may be done, and that a lien filed before the completion of the building is not filed prematurely. The same was held by the Supreme Court of Nevada in Self & Sellman Mill & Bldg. Co. v. Savage, 123 Pac. 333. The Supreme Court of Oregon has repeatedly ruled that the Mechanic's Lien Law should be liberally construed, and this court, in Russell v. Hayner, 130 Fed. 90, 64 C. C. A..424, expressly affirmed that doctrine in construing the Mechanic's Lien Law of Alaska. In Hooven, Owens & Rentschler Co. v. John Featherstone Sons, 111 Fed. 81, 49 C. C. A. 229, Judge Sanborn said:

"Labor and material once bestowed lose all their value to the laborer or materialman. He cannot take them back.. They enhance the value of the property upon which they are placed, and its owner and those who take under him receive all the benefits of the labor and of the material. In such circumstances the lien of the laborer or materialman should be maintained to the full extent to which the statutes give it."

We hold that the lien notice in the case at bar was filed in due time.

[5, 6] Assuming, as found by the court below, that within three days from the commencement of the building Borden posted a notice in a conspicuous place thereon that he would not be responsible for any material or work furnished in the construction thereof, the question remains whether he thereby defeated the appellant's claim of lien. The Code of Alaska, section 262 of chapter 28, Civ. Code, gives a lien to every contractor, lumber merchant, etc., who furnishes material in the construction of a building, for work or labor done or material furnished "at the instance of the owner." Section 265 provides that every building constructed on any lands with the knowledge of the owner "shall be held to have been constructed at the instance of such owner," and that his interest shall be subject to any lien filed in accordance with the provisions of the Code, unless he shall, within three days after he shall have obtained knowledge of the construction, give notice that he will not be responsible for the same by posting a notice in writing to that effect, in some conspicuous place upon the land or in the building. The provisions of section 265 are for the benefit and protection of the owner in cases where the work is not done and the material is not furnished at his instance, or at the instance of his agent. It is not the intention of the law, nor is it the purport thereof, that when in fact the work is done, and the material is furnished at the owner's instance, he may prevent a lien upon his property by posting the notice referred to in that section. We think that in the case at bar it should be held that the materials supplied by the appellant were furnished at the instance of the owner. On February 17, 1910, he executed a lease of the property for a term of five years to McCauley

and Palmer, in consideration of their agreement to pay $75 per month as rental and to commence and fully finish a building on the premises at their expense, and as a preliminary to the erection of the building he agreed to grade the lot and put in at his own expense "a good, suitable foundation for a building two stories and a basement in height, to cover the entire lot, to wit, 25 feet by 100 feet." The lessees further agreed to insure the building against loss by fire, in not less than $2,-500, any money collected thereon to be used in rebuilding or repairing the building if the lessees so desired, and, if they failed to rebuild, the insurance money to be paid to the lessor. It was further provided that, upon the failure of the lessees to pay any installment of rent when due, the lessor might declare the lease null and void, and that thereupon, or at the termination of the lease, he might repossess himself of the building and all improvements, "including steam heating plants, plumbing, wiring," etc. Before making the lease, Borden had discussed with the appellant the terms on which he could purchase lumber for the proposed building. Immediately upon the execution of the lease he began the construction of the foundation, and he completed the same by February 24th, and on that day McCauley and Palmer, by Goodall their contractor, began the erection of the building. The appellant furnished approximately one-third of the lumber therefor before it received actual notice that Borden disclaimed liability for the cost of the building. From the record it is evident that the building was constructed and insured principally for the benefit of Borden, and that the premises were leased to the lessees at a reduced rent in consideration of their promise to erect the building. Within a year from the time when the lease was made, Borden was again in possession of the property, and he leased the same at a monthly rental of $150, and he paid the plumbing bill and the sum of $480 due Goodall on his contract with the lessees for the erection of the building.

[7] It is the general rule that where a lease contains a provision authorizing the lessee to make improvements "by deducting the cost thereof from the rent, or where part of the consideration of the lease is the making by the lessee of improvements which become a part of the realty, or that the improvements made by the lessee shall revert to the lessor, a mechanic's lien may attach to the property for work done or materials furnished, pursuant to a contract with the lessee." 27 Cyc. 58; Kremer v. Walton, 16 Wash. 139, 47 Pac. 238; Shaw v. Spencer, 57 Wash. 587, 107 Pac. 383; Whitcomb v. Gans, 90 Ark. 469, 119 S. W. 676; Potter v. Conley, 83 Kan. 676, 112 Pac. 608; Western Lumber Co. v. Merchants' Amusement Co., 13 Cal. App. 4, 108 Pac. 891; Wallinder v. Weiss, 119 Minn. 412, 138 N. W. 417; Dougherty-Moss Lumber Co. v. Churchill, 114 Mo. App. 578, 90 S. W. 405; Lumber Co. v. Nelson, 71 Mo. App. 110; Crandall v. Sorg, 198 Ill. 48, 64 N. E. 769; Carey-Lombard Lumber Co. v. Jones, 187 Ill. 203, 58 N. E. 347; Jones v. Menke, 168 N. Y. 61, 60 N. E. 1053. In Wallinder v. Weiss, the court held that, in order that the lessor's interest be subject to a lien, it is essential that he either contracted for the improvement or else that it was done at his instance, and held that he might protect his interest by notice "unless he has required the im-

provement to be made." In Western Lumber & Mill Co. v. Merchants' Amusement Co., 13 Cal. App. 4, 108 Pac. 891, it was held that the finding of the court below that the owner failed to give the notice that he would not be responsible was rendered immaterial by the other finding that the lessee was the mere agent of the owner of the land, in the erection and construction of the building. In Lumber Co. v. Nelson, one of the stipulations in the lease was that the lessee should spend $20,000 in making improvements upon the leased premises, according to plans and specifications which had been agreed to. These improvements were to become the property of the lessor at the termination of the lease. The court said:

"In this state of the evidence, it may be truthfully said the improvements on the Nelson lot and the material necessary to make them were made and furnished by his consent and for his benefit. He not only consented to them, but contracted with his lessee for them."

In Crandall v. Sorg, where the owner of vacant premises leased the same for 99 years at an annual rental, and by contract the tenant was to construct upon the premises a building at a cost of $300,000, of which $100,000 was to be contributed by the lessor, and by the contract it was provided that the property should be insured, and in case of loss the amount recovered should either be used in reconstruction or be paid to the lessor, it was held that the lessor's interest was subject to a mechanic's lien, notwithstanding that the contract provided that there should be no lien thereon.

[8] We find no merit in the contention that the appellant's claim of lien was rendered void by the fact that the two items of lumber furnished on July 8th and August 6th were not used in the building. It might be a sufficient answer to the contention to point to the fact that the total value of those items amounted to the unimportant sum of $3.24. But it may be added that the case at bar is not like Williams v. Toledo Coal Co., 25 Or. 426, 36 Pac. 159, 42 Am. St. Rep. 799, cited by the appellee, in which a lumber company in its notice of lien made a lump charge for material and labor, when the lien law allowed it no lien for labor; but it is similar to Fitch v. Howitt, 32 Or. 396, 52 Pac. 192, and West Side Lumber & Shingle Co. v. Herald, 64 Or. 210, 128 Pac. 1006, in which it was held that the creation of a mechanic's lien will not be defeated because of the inclusion in the claim of lien of some lumber not delivered or used, the claimant having reasonably believed it to have been left at the proper place for use in the building, but that reduction will be made therefor. This court held likewise in Pioneer Mining Co. v. Delamotte, 185 Fed. 752, 108 C. C. A. 90. There is nothing to show that the appellant did not, as his testimony indicated, deliver the lumber on July 8th and August 6th in good faith, and on the understanding that the material was to be used in the construction of the building.

The decree is reversed, and the cause remanded to the court below for further proceedings and with instructions to enter a decree for the appellant in accordance with the finding as to the amount due it.